UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

PACER Cover Sheet
for Electronically Filed Documents

Any data shown here are current as of 06/11/06 . Any element of information on this form, except the received date, is subject to change as changes may be made to the Court's official docket.

**Case Title:** Joel T. Danley

**Case Number:** 04-13378

## Document Information

**Description:** Findings of Fact and Conclusions of Law by Judge James S. Starzynski Re: [5-1] Motion For Relief From Stay As To The Pit, Corner of Florida and Desert Lakes Road, Alamorgordo, NM by Western Bank - Alamogordo, or in the Alternative, [9-1] Motion For Adequate Protection by Western Bank - Alamogordo.

**Received on:** 2004-09-30 09:39:43.000

**Date Filed:** 2004-09-30 00:00:00.000

**Date Entered On Docket:** 2004-09-30 00:00:00.000

## Filer Information

**Submitted By:** James Burke

**If this form is attached to the document identified above, it serves as an endorsed copy of the document as it existed on the above date. To confirm that nothing has changed since then, review the docket.**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
JOEL DANLEY,
    Debtor.                                               No. 11-04-13378 SL

**FINDINGS OF FACT AND CONCLUSIONS
OF LAW ON WESTERN BANK-ALAMOGORDO'S
MOTION FOR RELIEF FROM AUTOMATIC STAY
<u>OR, IN THE ALTERNATIVE, FOR ADEQUATE PROTECTION</u>**

       This matter came before the Court on July 26, 2004 for final hearing on the Motion for Relief from Automatic Stay, or, in the alternative, for Adequate Protection filed by Western Bank - Alamogordo ("Bank")(Doc. 5).  Bank appeared through its attorney Scott & Kienzle, P.A. (Paul M. Kienzle III).  Debtor appeared through its attorney Russell C. Lowe, having filed an objection to the Motion (Doc. 11).  Bank seeks relief from the automatic stay to continue its pending foreclosure against real property of the estate.

       Three persons testified: Mr. Marshall Coker, Execute Vice President of Bank; Dr. Vince Barrett, an Appraiser; and Mr. Joel Danley, the Debtor.  The parties stipulated to admit into evidence Bank's Exhibits A through S, and Debtor's Exhibits 1 through 24.  Having considered the testimony, the exhibits, the arguments of the parties at trial, and the post trial briefs submitted by the parties (docs. 47 and 48), the Court

issues the following findings of fact and conclusions of law. This is a core proceeding. 28 U.S.C. § 157(b)(2)(G).

**FINDINGS OF FACT**

1. The Bank's loan documents appear as exhibits 1 through 9.

2. Exhibit 10 shows a total debt due Bank as of July 23, 2004 in the amount of $1,629,766.13.

3. Repayment of this debt is secured by perfected mortgages on a sand and gravel pit ("Pit") and a ranch.

4. Mr. Coker testified that the interest rate on the note was 10.25%, but after default interest accrues at a default rate of 21%. Exhibit 10 shows interest accruing on the principal balance at $281.56 per day, but this is at the 10.25% rate. The interest accrual at 21% would be about $576 per day.

5. Exhibit 10, pages 1 and 3, show that the Bank paid the real estate taxes on the Pit in the amount of $14,550.82.

6. Exhibit 10 also shows that the loan is due for the March 25, 2001 and all subsequent payments.

7. The Court has reviewed the several appraisals submitted by the parties, and finds that Dr. Barrett's is the most credible, comprehensive and methodical. This appraisal took into consideration both the supply or reserve of materials, and the demand therefor in arriving at his

Case 04-13378-s11    Doc 65    Filed 09/30/04    Entered 09/30/04 11:21:00 Page 3 of 10

valuation. This approach was not used in the other appraisals. The Court finds the other appraisals not credible.

8. Based on the Barrett appraisal, the Court finds that the value of the Pit to be $826,000.

9. The parties stipulated that the value of the Ranch is $180,000. See Factual Stipulations, doc. 26, ¶2.

10. The parties stipulated that the value of the stockpiled material in the Pit is $100,000. See Id. ¶ 1.

11. The total value of the collateral is $1,106,000. There is no equity in the collateral.

12. Debtor is not in physical possession of the Pit, and was unaware if continued operations of others were removing materials.

13. Debtor's 2002 income consisted of: wages, $9,500; unemployment compensation, $10,526; interest $206; a state tax refund, $904; and a farming net loss of <$2,715>. See Exhibit 18.

14. Debtor's 2003 income consisted of: state tax refund, $2,826; and a farming net loss of <$2,047>.

15. Debtor testified that he also had received $850 per week from a party with which he is suing the State of New

Page -3-

Case 04-13378-s11    Doc 65    Filed 09/30/04    Entered 09/30/04 11:21:00 Page 4 of 10

Mexico for "claim support", but that these payments stopped in May.

16. Debtor owns 50% of Johnson and Danley Construction, and 100% of JD Materials, Inc.

17. Johnson and Danley Construction and Meadow Valley Contractors, Inc. filed a lawsuit in the Twelfth Judicial District Court, Otero County, New Mexico on May 25, 2004 against the State of New Mexico ex rel. New Mexico Department of Transportation. These plaintiffs seek damages in an amount to be determined at trial. Debtor testified that he believed the value of the lawsuit was $7 million in hard cost damages (*i.e.*, what they spent over what they were paid) and $15 million in special damages for loss of the two companies. Debtor did not support these estimates with any expert testimony or additional evidence. Debtor also did not explain how any of these funds would flow to him[1], or whether the Plaintiffs were solvent. Debtor guessed that this case

---

[1] On cross examination Debtor did acknowledge that there was a joint prosecution agreement under which the first $700,000 of lawsuit proceeds would be split between Johnson & Danley Construction and Meadow Valley, but Debtor could not recall the details.

Page -4-

could get to trial in 1 to 2 years[2]. The Court therefore finds that the valuation of this asset is speculative, and that the timing for receipt of any proceeds is speculative.

18. Debtor has no other significant assets.

19. As of September 29, 2004, no plan or disclosure statement is on file in this case.

20. Debtor filed a Bench Brief (docs. 31 and 44) that outlines several possible reorganization efforts that may be attempted. One is a sale of the Pit by auction. Another is to put the Pit out for bid with a "stalking horse." As of the trial, Debtor had 14 or 15 aggregate users in mind who might be interested. He had not contacted them about specific procedures nor had he provided appraisals to them. Therefore, the Court finds that no real efforts have been undertaken to effectuate such a sale.

**CONCLUSIONS OF LAW**

1. Relief from the automatic stay is governed by 11 U.S.C. § 362(d), which provides in relevant part:

    > On request of a party in interest and after notice and a hearing, the court shall grant

---

[2] In Debtor's Bench Brief (doc 31, page 3), he states that the trial would be completed within 60 months.

>       relief from the stay provided under subsection
>       (a) of this section, such as by terminating,
>       annulling, modifying, or conditioning such stay–
>       (1) for cause, including the lack of adequate
>       protection of an interest in property of such
>       party in interest; [or]
>       (2) with respect to a stay of an act against
>       property under subsection (a) of this section,
>       if-
>             (A) the debtor does not have an equity in
>             such property; and
>             (B) such property is not necessary to an
>             effective reorganization.

2.  Under Section 362(d)(1) lack of adequate protection is a ground for relief from the stay. Means for "adequate protection" are listed in Section 361:

    > (1) requiring the trustee to make a cash payment
    > or periodic cash payments to such entity, to the
    > extent that the stay under section 362 of this
    > title ... results in a decrease in the value of
    > such entity's interest in such property;
    > (2) providing to such entity an additional or
    > replacement lien to the extent that such stay
    > ... results in a decrease in the value of such
    > entity's interest in such property; or
    > (3) granting such other relief ... as will
    > result in the realization by such entity of the
    > indubitable equivalent of such entity's interest
    > in such property.

3.  In <u>United Savings Assoc. of Texas v. Timbers of Inwood Forest Assoc.</u>, 484 U.S. 365, 375-76 (1988), the United States Supreme Court addressed Section 362(d)(2):

    > Once the movant under § 362(d)(2) establishes
    > that he is an undersecured creditor, it is the
    > burden of the *debtor* to establish that the
    > collateral at issue is "necessary to an
    > effective reorganization." See § 362(g). What
    > this requires is not merely a showing that if

> there is conceivably to be an effective
> reorganization, this property will be needed for
> it; but that the property is essential for an
> effective reorganization *that is in prospect*.
> This means, as many lower courts, including the
> en banc court in this case, have properly said,
> that there must be "a reasonable possibility of
> a successful reorganization within a reasonable
> time." 808 F.2d, at 370-71, and nn. 12-13, and
> cases cited therein. The cases are numerous in
> which § 362(d)(2) relief has been provided
> within less than a year from the filing of the
> bankruptcy petition. And while the bankruptcy
> courts demand less detailed showings during the
> four months in which the debtor is given the
> exclusive right to put together a plan, see 11
> U.S.C. §§ 1121(b), (c)(2), even within that
> period lack of any realistic prospect of
> effective reorganization will require §
> 362(d)(2) relief.

(Footnotes omitted; emphasis in original.)

4. The Court finds cause to terminate the automatic stay under Section 362(d)(1). Debtor has made no payments in over 3 years. Interest is accruing at over $560 per day. Bank has been forced to pay the taxes on the property. Materials at the Pit are not safeguarded and, in fact, may be being removed by others. Debtor lacks any capacity to make periodic payments to Bank. Debtor lacks any significant asset on which to offer a replacement lien. Debtor did not demonstrate that his ownership interest in the companies, or his possible future entitlement to lawsuit proceeds, were of any value. And,

Page -7-

Case 04-13378-s11    Doc 65    Filed 09/30/04    Entered 09/30/04 11:21:00 Page 8 of 10

realization of that value, if any, might come in the distant future.

5. The Court also finds that the automatic stay should be terminated under Section 362(d)(2). Debtor has no equity in the properties. Debtor did not prove that there is any likelihood of an effective reorganization that is in prospect. Debtor did suggest that perhaps he could auction off or otherwise sell the Pit, but did not prove to the Court's satisfaction that this would yield more than Bank's debt. In fact, the Court has found that the Pit is worth considerably less than the Bank's debt. Furthermore, Debtor has not taken any steps to actually initiate the process for any sale outside of a plan, and to date has not filed a plan or disclosure statement.

**CONCLUSION**

By separate order, the Court will enter an Order granting Western Bank - Alamogordo's Motion for Relief from Automatic Stay.

_____
Honorable James S. Starzynski
United States Bankruptcy Judge

I hereby certify that on September 30, 2004, a true and correct copy of the foregoing was electronically transmitted, faxed, delivered, or mailed to the listed counsel and/or parties:

Russell C Lowe
PO Box 90536
Albuquerque, NM 87199-0536

Paul M Kienzle, III
PO Box 587
Albuquerque, NM 87103-0587

Office of the United States Trustee
PO Box 608
Albuquerque, NM 87103-0608

-and to the following additional interested parties:

Curtis A Jennings
2800 N Central Ste 1800
Phoenix, AZ 85004-1049

Ann Maloney Conway
PO Box 1190
Albuquerque, NM 87103-1190

Jeanne Y Sohn
PO Box 1945
Albuquerque, NM 87103-1945

*James E. Burke*